Please all rise. Here ye, here ye, Most Honorable McCutcheon Court, where the Second Judicial District is now back in session. The Honorable Susan F. Hutchinson is presiding. Please proceed. Your Honor, the third case on the docket this morning is 2-25-0154. American Backflow & Fire Inc. v. ASSE International Chapter of IAPMO, LLC. Your business is ASSE International. Defendant's affidavit. The Honorable W. Kevin McCloskey. Mr. George W. McCloskey. The Honorable Kevin Atherton. Mr. Jason W. Chaka. All right. When I say good morning, I still have four or five minutes, and so it still is morning. So, Mr. Svoboda, you may proceed. May it please the Court, I'm George Svoboda. I represent the appellants in this case, American Backflow & Fire Prevention, Inc. And three of their employees who were also plaintiffs in the case, David Less, Caden Harbett, and Lindsay Bufard. We have two consolidated appeals before you today, Your Honors. One of the appeals was an appeal from a summary judgment ruling by Judge Christensen. And the other is an appeal of judgment notwithstanding the verdict by Judge Baronis after we had a three-day jury trial for the individual plaintiffs. I'll call them the individual plaintiffs. And I'll start with the jury trial. We had a three-day jury trial, a six-person jury. The plaintiffs presented multiple witnesses, multiple exhibits, and the jury heard the testimony they ruled in the plaintiffs' favor. This case was the individual plaintiffs were saying that their certifications for fire sprinkler testing were revoked improperly by ASSE International. And ASSE International, their defense was that these plaintiffs didn't have the requisite five years of experience. These certifications were granted. They held them for several months. They were performing the role of a lead and tester with these certifications. But didn't ASSE say that they granted certifications regularly and never really investigated them until there was a complaint? Yes, that was what they said. They said they never investigated. They took these applications. They had agents of theirs at these schools take these applications. There was more than just the application and the experience. They had to pass a practical test or the hands-on test. This was a five-day course. Counsel, the bottom line is they didn't comply with the requirements. But they did comply, and that was why. Well, even if you worked five years in this business at age 17, what if you didn't? Right. I mean, it doesn't seem to me with all due respect to be any gray area here. That's right, and they did. We proved to the jury that they did work for five years. Each of the three of them worked for five years in the industry and had the experience. But in the industry, wasn't it relevant work experience? It was. It had to be in the industry. In fact, Jason Shank, the former president of ASSE, said that if you worked for a fire sprinkler contractor, that would be considered experience in the industry. David Less had worked seven years for American Backflow and Fire Prevention. He offered his offer letter as evidence of his start date. They had to have three years of inspection, testing, and maintenance. Each of them produced voluminous spreadsheets of all the jobs that they'd worked on and the dates and times and the amount of time that they worked on those jobs. Even if Mr. Caden had worked for five years prior to his application, he was still a minor when he applied. He was 17. He was a minor when he applied. And that's against the rules up front. It wasn't against ASSE. ASSE did not have any rules regarding age. In fact, that was one thing that Dan Harbutt, the president of American Backflow, asked. Is there an age limit? And they said no. There is a provision that the work cannot be done as a minor. No, there is no provision as such. I'll find it and I'll talk to you about it.  But Caden lived in Arizona, so there weren't work rules. And then we also, you know, there's federal rules around underage employment. Caden is the son of Dan Harbutt, the owner of American Backflow. He's perfectly allowed to, at age 12, start working full time for his family business, which he did while he was also going to school. And he produced a letter from Terrace Tubervitz, who was the head of the IT operation, the information systems operation at American Backflow, of all the work that he had done actually designing the system that did the inspection, testing, and maintenance in the field. And he went out in the field with the lead technicians to document how they do their job. So that was the experience that he was gaining during those five years before he applied for his certification at ASSC International. And again, there were three employees, so, you know, we can get hung up on Caden, but David Les, you know, is 56 years old or something. He's got a lot of experience. And he had the five years of experience in the industry, and he demonstrated he had the three years of inspection, testing, and maintenance experience.  Didn't she find that he had two-and-a-half years' work experience in the fire sprinkler industry, based on his spreadsheet? The spreadsheet only had the two-and-a-half years because that's when the system was installed and they were able to capture what jobs people actually worked on. But he actually did have more experience than that. And there was testimony at the trial about what constitutes these years of experience. And Jason Schenck actually clarified that, well, it's not 40 hours a week. Some people might not have work for a number of months. But then they work overtime, so it's the aggregate amount of time that equates to that. Clearly, David Les had met all the requirements. Okay. ASE determined that acceptable documentation, whether they had spreadsheets and voluminous reports, could not be based on applicant self-certification and employee certification of current employment, work allegedly done as a minor, and work done in areas other than fire sprinkler retention or inspection. And the reason for the 18, or the reason for the minor issue, is that there was testimony from Mr. Schenck that under 18, the whole premise of age is based upon working 40 hours a week. And I'm not sure. You have to go to high school until you're 16. And so that takes out four years in Mr. Caden's life. And how could he work 40 hours a week if he's going to full-time school? Right. That was testimony about what they said they believed? Well, that's what they determined would be appropriate documentation. But that is not what the bargain for. Remember, this is a breach of contract, right? So that was not something that the parties bargained for up front. That was not in their standards. That was not in their guidelines. This is what they determined after. What do you mean they bargained for? The parties bargained for to get a certificate. Right. But they had to meet the qualifications in order to get the certificate, correct? That's correct. But there is nothing that ASSE said up front that said, you know, somebody who's underage can't get a certification. There was nothing up front that described what kind of documentation was required. Why did they go so far away to get certified? They went to this school because that was the only non-union testing operation that had availability for them to get trained. And they had to be trained by January 1st to meet new Illinois guidelines for this type of testing work. And, again, there were also these guidelines. The guidelines had no mention of documented work experience. They just said experience. There's no definition of what experience is. Isn't that implicit if I'm going to require in order to certify you that you have whatever it is, that you be in a position to document that with some credible evidence? Right. That's not inherently self-serving or biased. I mean, isn't that just implied? For example, you're standing here today, I didn't ask you if you're a licensed attorney, but I'm assuming so, right? Right. In order to do that, this is something we actually argued to the jury, but in order to, how do you document your experience? You create a resume. And in order to create a resume, you have to document that yourself. There's nobody else who documents your experience for you. So you document that experience by listing who your employers are, when you started to work there, what you did. Not only did these plaintiffs do that, they actually provided details in these spreadsheets about the work that they did. And I don't know that there's any other way to do it unless you've got a union operation, you know, certifying for you that, you know, you have this experience. But then that would say that these licenses are only available to union jobs. That's clearly not the intent. So each of, and then what good are these resumes? Well, the resumes, it's up to the, you know, if you're giving the resume to somebody, they need to check the resume and validate that, you know, these things are true. So they call your employers. They validate the employment. That's how experience is documented. Well, you could also bring an affidavit from your prior employee or employer saying, I've reviewed this report filed by XYZ, and I can attest to the fact that it's correct because he worked for my company. Why can't you do that? That would be an option. Jason Shank said that offer letters would be acceptable. Documentation of when you started working at an employer will be presented for David Less and Lindsay Bufard offer letters. Lindsay Bufard also gave the name and address and phone number of her prior employer and said what she did for them and how to get a hold of them so they could validate her experience there. And Kayden, you know, had a letter from an employee, a management employee of American Backflow when he started working and what he did. So, I mean, I would guess that is an affidavit. It was signed. It didn't have, you know, like... Well, is there a booklet or a pamphlet or maybe on the web page that indicates the things that should and should not be provided for purposes of going to this program? There is not. And you have to fill out an application. So each of the three employees filled out an application on the school website that asked a bunch of questions. And basically they document their resume on the website. So they put it into there. They talk about what kind of experience that they have had. And that is reviewed by the schools before they start in the program. I've got a minute left and I do want to touch on American Backflow. American Backflow, Judge Christensen found that American Backflow did not have standing, that they were not a party to the contract. Again, this contract is an implied contract because... Well, let me ask you this because I'm sure you're aware this might be a concern. Is American Backflow, if all three of these individuals left American Backflow today, American Backflow has nothing. They keep their certifications if they have no certifications. They keep them. American Backflow gets nothing. So what is the contract between American Backflow and them, other than if they leave before two years, they have to pay them? Well, that is the contract. They have to pay them. But they leave before that. That's right. So how is that a contract, a meeting in the mind, with AASC? Well, because it's common practice in the industry when an employer is paying for training to get certifications.  So they knew that this is the way things are done. It's the employers who benefit from these certifications. You don't see people going out and getting these certifications on their own. These are done by the employers. And the employers paid for it. They paid for all of the training. Right. And the employer said to the employee, hey, if you leave before two years, you pay me back for this or whatever. I mean, I think there are a lot of employers that have that type of – I mean, I know in the law field, if you go to a lay seminar in another state and then you come back and the next week you quit, you have to pay for that. But how is that a contract between the trainer and the employee – and the boss, if you will, versus a contract between the boss and the employee? Because it's – whether there's a direct benefit is what the law says. So clearly ASSE knows that there's a direct benefit. They know that American Backflow is making the payments. They're – we argued primarily that they're a party to the contract just by the fact that they're seeking to get their employees certified and ASSE – But the employees are the ones that fill out the application. That's right. That's part of the contract. They have to be a party as well. So there's two parties to the contract. So what did AA – what did American Backflow fill out for AASSE? They made the payment. They made the initial contact with the school and made all the arrangements for the training. My time is up. Anything else? Nothing. Thank you. Thank you. You'll have a chance to respond if you choose to after counsel argues. And, Mr. Erdrich, you may proceed. Good afternoon, Your Honors. My name is Jason Jockum, and I represent the appellee ASSE International, chapter of IAPMLLC, doing business as ASSE International, which I will refer to as, Your Honors, probably guess as ASSE today. So this doesn't take any longer than it has to. Well, can you start off where Mr. Svoboda left off, the implied or express contract or any contract at all between American Backflow and ASSE? Absolutely, Your Honor. First of all, there's no question that these are, quote, implied contracts, and obviously the court knows an implied contract has to have all the same features as an express contract, all for acceptance and consideration. There's no question, in fact, that these implied contracts contain conditions precedent, as we heard discussed regarding the individual appointees that they have to meet, the hours requirement, the work experience requirement, the passing the test, and passing the practical test. So there's a written and a practical test. And there's no dispute of fact that ABFP, American Backflow, did none of these things. The only thing ABFP did in this situation is they paid for it. So the certifications were issued to the individual appointees alone. As counsel has conceded, the certifications were theirs. They could have left their employment with American Backflow at any time and taken their certifications with them. Isn't there an indirect benefit to American Backflow because it now employs persons who are certified in the industry? Absolutely, Your Honor. An indirect and incidental benefit as a third-party beneficiary, that is not sufficient. In fact, as this Court has held in Selby, the benefit has to be so – has to be such an intent to benefit the third party that it must be an express declaration in the contract. There is nothing express in any of these contracts to benefit American Backflow. Of course, American Backflow benefits by having properly licensed employees, just like law firms benefit by having properly licensed attorneys that pass, you know, renew their license every year. Every two years, we have requirements to meet certain continuing legal education, which our firms provide for. Sometimes our firms will reimburse us for those costs. Of course, the law firm benefits from that, from having an attorney that can practice law in the State of Illinois and is licensed to do so, but that is an incidental benefit. The person enjoys the benefit, not the law firm. Any benefit is enjoyed by the person. The law firm gets an incidental benefit. And for counsel to argue that there's a direct benefit to American Backflow is simply a misstatement of law, and counsel has been unable to cite any analogous Illinois case law on this issue at all. It just does not exist. Well, how about the Barber case? The Barber, the firefighter, where? Absolutely, Your Honor. And in that case, there was an express provision in the contract between the city and the new fire protection agency saying we are going to, you know, honor our commitment to this firefighter to pay him this additional amount and give him this additional year of credit towards his pension. There was an express declaration. In fact, the court said it was so express and it was such an intent to benefit that third party that the provision in the contract that there was no intended third-party beneficiaries was deemed to be the general, and this was the specific, and this was applied. So mere financial support isn't enough in your opinion? Not only in my opinion, Your Honor, but there is no Illinois case holding such. The South's case says otherwise. But again, there has to be an express declaration of an intent. And in Salve, again, same court, there was not such an express declaration, and that is true here as well, Your Honors. There is no express declaration to benefit ABFP. And in actuality, if we expand it to where now an employer has standing to sue, I mean, where does it end? This essentially would grant third-party beneficiary status to any employer that pays for anything for their employee. So that is not what Illinois law currently holds. Turning to the – go ahead. Well, counsel indicated that this is a non-union shop, so to speak. Is it run by unions? And it employs people who probably don't work in unions. How do you advertise? How do people find you, and what do you say, or what does your client say, of course, in this advertisement? Well, so I'll give you some of the background, Your Honor. American Backfill is actually a union shop. It is not a non-union shop. As noted in this court's ruling in American Backfill and Fire Prevention, Inc. v. Hinks, there is a longstanding union, non-union disagreement, which has involved the National Labor Relations Board, attempts to unionize, many different – there have been prior lawsuits, settlement agreements between American Backfill and the local 281. So American Backfill is a union. They're just a union company. They're just trying to prevent the union from actually getting into them. But that is not before the court today. How does ASSE advertise? Well, ASSE is a non-for-profit voluntary organization that creates product specification standards as well as providing professional certification standards for individuals and trades. It's well known in the industry. There's another organization in Illinois called NYSIT that provides something very similar regarding fire sprinklers. ASSE has 22,000 members. It has 20 programs, primarily plumbing and backflow programs, but has additional subprograms in it as well. And its working groups and committees create standards for product as well as personnel certifications. How does ASSE advertise? Well, NYSIT has a website, and it is well known in the industry for creating personnel certification standards through its working groups and subcommittees. How the process works is ASSE creates, and it's through its subcommittees and working groups, a guideline for a particular standard, in this case the 1510 standard, which applied for inspection, testing, and maintenance of fire sprinkler systems. The guideline is provided to ASSE member schools to then implement the program. And it has everything you need to do this. It's how do you proctor exams? How do you, you know, what's on the application? So on and such forth. What's the standards? Everything for how the member schools are supposed to actually run this program. So the member schools are actually the ones that implement this program, in this case the 1510 certification. They advertise it on their websites and through other trade organizations in the industry. And do they let them know what they have to have by way of qualifications in order to be certified? Absolutely, Your Honor. That is in the guidelines, and obviously it's in the certification as well. That's listed. And the applicant applies to the member school, in this case the American Fire and Sprinkler Association. And on the application, in this case, a pertinent is each applicant swears and affirms, and they write their, sign their signature and say, I have certified that I have five years of documented practical experience in the fire sprinkler industry, which includes three years of experience in inspection, testing, and maintenance, and two additional years that can include design and installation work. So they just take their word for it? Affirmative, Your Honor. Yes, it is. And if it isn't until somebody complains that they go back and double check? If there is a complaint with, as Mr. Shank testified, some meat to it, not just a bare bones, this person doesn't have it, that is when ASSE will audit or inspect a person's work, because that is the member school's responsibility at first, and then if there is an issue, ASSE can go back and request the information from the applicant, which is what happened in this case. After they've already paid the fee to get to the school? After they've, yes, Your Honor. However, in this case, of course, there was no information or no testimony that Mr. Harbutt, for instance, who investigated the program, ever spoke to anyone at ASSE. In fact, he only spoke to anyone at AFSA who, we don't know what he said. He couldn't actually identify the person he spoke to, what was said, with any foundation. So there is zero testimony in the record that we can actually view on that issue. Let me ask you this. Yes, Your Honor. There is a requirement that they swear under oath that they have these certain qualifications and can document practical experience. Does it tell them how to establish or how to document that experience? Your Honor, the standard itself does not say how a person can document because we're also dealing with thousands of companies that can have. I got that, bud. But it does not specifically state how to document. Now, Mr. Schenck testified that ASSE was willing to consider all manner of documentation. They could have submitted pay stubs. They could have submitted W-2s. He did not say they could submit offer letters. But this is after the fact. Correct, Your Honor. So at the time of application or even completion of the school, the testing, any of it, even when you get your certificate, nobody says, look, if it's challenged, here's what you're going to need to prove. No, Your Honor. It is the substance of what you will have to document. I understand, Your Honor. And there is nothing in the guideline or no specific that says we will accept these forms of documentation. And that is simply because of the number of businesses that our company, ASSE, deals with on a regular basis. Each company has its own forms and its own method of documenting how its employees are certified. But just as an example, Your Honor, Ms. Dan Harbutt, the owner of ABFP, also had a complaint made against him regarding Mr. Hicks. Mr. Harbutt was able to produce a certification from 2015 that he had obtained from Oklahoma, and ASSE accepted that as documentation of work experience in the fire sprinkler industry. So it can be a lot of different documents that ASSE is willing to accept. ASSE, I mean, the cost of these certificates. It's the other side of the coin. Yes. How do they know what you will not accept up front? Well, Your Honor, as far as what we won't accept, ASSE never limited plaintiffs of producing anything. So the mere fact that they could not produce documentation, I understand Your Honor's point of, well, hey, this is, what are we talking about here? Well, it's just a whole minor thing. Yes. Well, nowhere does it say you had to be a majority when you accumulated that work experience. So how do you discount that after the fact? I can understand Your Honor's point regarding that. Two points I'd like to answer with. Number one, and my client testified to this, Mr. Shank, that they never had any reason to think at any point in time that a 17-year-old would apply for one of these certifications. Mr. Harbert would have been 12. He would have been in sixth grade to accumulate this kind of work experience. And the point of the certification is to have qualified individuals doing this. You know, at the time of the application, when they were looking at the application, they knew he was 17 and that he couldn't have had five years' experience. Why didn't they say at that time, hey, hold on, this guy was a minor. Why did they wait until he took the class, they got the money, and then after somebody complains about it, then they're going to take a closer look at it? Isn't that arbitrary, if you will? Well, two things, Your Honor. First of all, the application at that time did not have a date of birth on it because, again, my client did not have any expectation that a 17-year-old would apply. So it didn't actually have a – the AFSA application did not have a date of birth. But, again, even if, Your Honor, that issue of what is documented, that seemed to trouble the trial court for a number of issues as well. You know, in the motion for summary judgment, in the motion for directed verdict, in the motion for J&OB, the term documented seemed to trouble the court. But ANSTC is a voluntary organization. It is entitled to deference in how it interprets its own rules and regulations. It's also, as this Court held, a quasi-judicial body. It can determine what is and what is not that term documented. And Mr. Shank testified as to a number of documents that the individual plaintiffs could have provided that might have shown they had the requisite work experience, and they didn't. And, in fact, the individual plaintiffs resisted and refused to provide additional documentation. They wanted NDAs. They wanted this. They wanted that. They would not produce these documents. And the documents they did produce simply did not pass muster, a spreadsheet, self-generated. I understand what you're saying. I do. My holdup is why didn't they look at it closer before? I mean, it would be like taking a bar exam, and you don't have the qualifications. You take it, you pass, and then somebody complains, and you're like, oh, shoot, yeah, you know, give us that law license back because you weren't qualified. You know, I know that we're supposed to, we're not to interfere with the internal affairs of some voluntary association. But, you know, it seems to me it's absent mistake, fraud, collusion, or arbitrariness. And it seems to me arbitrary. What are they handling? But, Your Honor, this court in Wilson v. Illinois Benedictine College held that, again, there was a standard. It said you have to have, you know, C grades in your major. There certainly could have been misunderstanding of the student who, in that case, who maybe it's only certain classes. It doesn't say this class. It doesn't say I had to have a C in X, Y, Z class. It just said classes in your major. And the student got Ds in the school. If I may just briefly answer, Your Honor. Finish up. And the school, the student got several Ds in major classes. And the school refused to give him a degree in his major, which is a huge investment of his time and resources. And this court upheld the school's, you know, withholding of that degree because he did not comply with the condition precedent. I will say, Your Honor, the cost of the certification here is a couple hundred dollars. I mean, this is not nearly the expense of a college education in Wilson.  Well, you can certainly see the issues here and how, you know, at some point you're splitting hairs. You can certainly see the confusion of some of these issues, correct? I can understand the point in that there's certainly the term documented could have been defined better. But by any stretch of the imagination, by any term, the term document has to mean something written. And by any stretch of that definition, the individual plaintiffs never submitted a document or produced a document at trial that showed that they met the criteria and the condition precedent for this implied contract that they admit that they knew about. Okay. So my point is, and we're having a good discussion here, right? My point is sanctions. You know, are you talking about sanctions only with respect to the contracts, alleged contract between American Backflow and ASC? Or it sounds to me like you were talking about sanctions for the whole case. No, Your Honor. That was only with respect to American Backflow. I apologize if that was not clear. Okay. That's only with respect to American Backflow. We can admit that the term documented in the standard could probably have been defined better. And certainly that there are some arguments to be made on both sides. With regard to American Backflow's argument of an implied contract, we do not believe that that is advanced with any basis in fact or law. It essentially relies on Article III injury and fact-standing that courts in Illinois have repeatedly refused to enforce. So for those reasons, we ask that this Court affirm the trial court in all respects. Thank you, Your Honors. I'm sorry, did you have any? No, that's fine. I just wanted to check before you got all your papers picked up. All right. Mr. Svoboda, if you wish to respond, you may do so now. Okay. I have a few points. First off, there was some discussion about incidental benefit versus direct benefit. And I mean, we're strenuously arguing that there's a direct benefit to American Backflow that's known in the industry. These are both industry players. That American Backflow, the only reason that they went to ASSC to get this certification is for their business and to be able to have lead technicians that can go out and do these testing inspections. It's a direct benefit. They make more money from these employees by getting them certified. Well, it's a mandatory benefit, isn't it? And it's mandated by the State of Illinois. But the point of this contract is, though, that they don't sign anything. They don't provide anything. Maybe they provided information in the background, but they didn't provide anything other than money. And ASSC isn't saying, as a result of this transaction, we will do this for you in any way. They said, as long as your employees go through this process, we're going to issue them certifications. But your employees is the key benefit there, and you pay for the certifications. So we believe there is a direct benefit. And what muddies this is the fact that ASSC uses kind of a shrink-wrap, retail-style contract, which is implied. It's, you know, you pay, you apply, and, you know, if you pass all the certifications there, you know, and the requirements that are documented in the guidelines, you get the certifications. As American Backflow, the employees are not union employees. American Backflow does not have a contract with the Plumbers or the Sprinklers Union, but they are being unionized, I mean, but just to be clear on that. And they do not enjoy any union benefits. So they can't, they aren't getting apprenticeship training from the union. Dan Harbert at American Backflow, American Fire and Sprinkler Association, the school, is a small shop. They only have a handful of employees. Dan Harbert couldn't remember the name of the person. He called her Janine or something. It's in his testimony. But Bob Caputo, the president of AFSA, was actually testified in the jury trial. So they know who American Backflow is. And Caden Harbert, when he arrived for the training, the employees asked him about his age, and he produced his driver's license. There was testimony to that. Yeah, and that, even if they did, they knew how old he was. That's right. Before he did the training. Before he did the training. But does that make it right? Because, I mean, what's the intent behind the Fire Sprinkler Contractor Licensing Act? I mean, there's an intent behind it. It's for the safety and that these people have to be fully qualified before rendering services on fire sprinklers. So even if they wrongfully gave him a certification knowing how old he was, how does that make it right? Well, because he actually was able to do all of the work. I mean, he took the test. He passed the 100-question written exam. He actually reached all of them. But he didn't have the qualifications. Well, he did. He actually had been working for them. He couldn't have been working 40 hours a week at 12 years old. Unless he dropped out of school. You go to school during the day and at night you work another eight hours at the company. And what he was doing in the initial parts of his training was he was developing these specifications for the system based on the inspection and testing of sprinkler systems. So that was giving him that experience that he used. Well, let's put it this way. If he walked into my house and I said, let me see your license, I would ask him to leave if he's 17 years old. I don't care what his license says. So how is that, how does that make any sense? Well, I might let him work at 17. I don't know about 12. Well, he didn't get a certification until he was 17. But he was working with someone else up until that point. Now, all these people, that's the point of the experience. They're not leads until they get the certification. Is there anything else you wish to sum up? Just on the motion for sanctions, I mean, I did not put anything forward here for a frivolous purpose. I believe there are real serious issues of law and fact at issue. One other issue is counsel raised in the beginning is the failure to cite to the record and asked us to strike your briefs. And, you know, you would say to an exhibit with, like, 1,000 or 100 pages, do you understand that when citing to the record, you have to cite to the page in the record? Yes. Did you get our amended Statement of Facts? We filed a motion for, and I sent copies in. We filed a motion to amend the Statement of Facts, and we actually, that was granted, and I only had two copies. Okay. I mean, we're not going to strike it based upon that. I'm just saying in the future, be sure you cite to the record, cite fully the cases that you are relying upon. Thank you, Your Honor. I appreciate it. But if you need them, we do have copies. I'm sure we have them. I'm sure my clerk will get them. Okay. All right. Thank you. Thank you. All right. Thank you again for your argument here today. We will take the matter under advisement. We're going to be on a little longer recess to prepare for our next.